UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KEVIN DAVIS,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           17-CV-3863 (MKB)
          v.

NEW YORK CITY DEPARTMENT OF
CORRECTIONS, NEW YORK CITY
DEPARTMENT OF INVESTIGATION,
CORRECTION OFFICERS BENEVOLENT
ASSOCIATION, INC., DINA SIMONS, First
Deputy Commissioner, GREGORY KUCZINSKI,
Deputy Commissioner of Investigation, HEIDI
GROSSMAN, Deputy Commissioner for Legal
Matters/General Counsel, BECKY SCOTT-
FEASTER, Warden – Commanding Officer of
E.M.T.C. Facility, JONELLE SHIVRAJ, Deputy
Warden of Security, RAJIN SHIVRAJ, Correction
Officer Investigator, MALIA GREATHOUSE,
Correction Investigator, and YOMAIRA KELLEY,
Correction Officer Investigator,

                              Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

          Plaintiff Kevin Davis, proceeding *pro se*, filed the above-captioned action on June 23,

2017 against Defendants the New York City Department of Corrections, New York City

Department of Investigation, Correction Officers Benevolent Association, Inc., Dina Simons,

Gregory Kuczinski, Heidi Grossman, Becky Scott-Feaster, Jonelle Shivraj, Rajin Shivraj, Malia

Greathouse and Yomaira Kelley.  Plaintiff alleges violations of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Age Discrimination in Employment Act, 29

U.S.C. § 621 *et seq*. ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et*

*seq.* ("ADA"), in connection with the termination of his employment at the New York City Department of Corrections ("DOC").  (Compl., Docket Entry No. 1.)  Plaintiff attaches to the Complaint a letter from the Equal Employment Opportunity Commission ("EEOC") dated June 16, 2017, notifying him of his right to sue in federal court.  (Compl. at 28.)[1]  Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted for the purpose of this decision.  For the reasons discussed below, the Court dismisses the Complaint.  Plaintiff is directed to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

## I.    Background

The Court assumes the truth of the factual allegations in the Complaint for the purpose of this Memorandum and Order.  Plaintiff has post-traumatic stress disorder ("PTSD").  (Compl. at 6.)  Plaintiff was employed as a corrections officer with DOC for approximately one year and two months, and previously served in the military.  (*Id.* at 7.)  Plaintiff alleges that while at DOC, he was "sexually abused, hazed, and assaulted by correction staff."  (*Id.* at 17.)  DOC staff would "rub up against" Plaintiff, make inappropriate sexual comments and jokes, and "walk by [him] and touch [his] private areas."  (*Id.* at 24.)  In one incident, co-workers approached Plaintiff while he was changing in the locker room, pulled his underwear down and "grabbed" him.  (*Id.*)  Plaintiff also alleges that during his employment with DOC, his assigned locker "kept getting defaced," and in one instance, other officers wrote "GET OUT BITCH" on his locker.  (*Id.* at 11, 19.)  Plaintiff made requests to be reassigned from certain areas of the facility after he was "splashed . . . assaulted [and] . . . repeatedly threatened" by inmates.  (*Id.* at 19.)  However, upon

---

[1]  Because the Complaint is not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

making such requests, the supervising "control room Captain" "would laugh and say [to Plaintiff] I didn't receive that memo you're going there anyway go report it like you report everything else."  (*Id.*)  Plaintiff claims that he endured a "toxic work environment," (*id.* at 20), and due to his "refus[al] to get with the program" and "hop on board the corruption train," "both the inmates and officers . . . set out to . . . 'run [him] out of the jail by any means necessary,'" (*id*. at 24*.*)

On October 6, 2016, after Plaintiff returned from military leave and vacation, Deputy Warden of Administration Anastasia Henderson-Blackmon informed Plaintiff that his employment with DOC was being terminated.  (*Id.* at 7.)  Plaintiff requested details from various personnel at DOC regarding the basis of his termination, but was not provided any further information.  (*Id.*)  Plaintiff alleges that the Department of Labor ("DOL")[2] told him that the basis for his termination was alleged "sexual abuse" of an inmate and failure to disclose a "domestic incident" that took place while Plaintiff was a student and NYPD Auxiliary Officer at the State University of New York at Oswego ("SUNY Oswego").  (*Id.* at 11.)  Plaintiff denies both allegations.  (*Id.*)  Plaintiff asserts that "DOC acted in bad faith without reason justifying the termination," that DOC is "conducting illegal and unfair labor practices," (*id.* at 8), and that he was "framed," (*id.* at 15).  Plaintiff seeks an order reinstating his employment, and also seeks back-pay, as well as damages for pain and suffering.  (*Id.* at 26.)

## II.   Discussion

### a.   Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the

---

[2]  Plaintiff does not specify when the DOL told him of the alleged basis for his termination.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b.  Plaintiff cannot assert claims against the New York City Department of Corrections and Department of Investigation

As an initial matter, Plaintiff may not assert claims against the New York City Department of Corrections and Department of Investigation, because such claims must be brought against the City of New York.  Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."  N.Y. City Charter, chap. 17 § 396.  This provision "has been

4

construed to mean that New York City departments, as distinct from the City itself, lack the

capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir.

2008) (per curiam); *see also Gordon v. City of New York*, No. 09-CV-3908, 2009 WL 3878241,

at *2 (E.D.N.Y. Nov. 18, 2009) ("To the extent plaintiff seeks to sue the New York City

Department of Corrections, that claim also fails.  As an agency of the City of New York, the

New York City Department of Corrections cannot be sued independently." (first citing *Lauro v.

Charles*, 219 F.3d 202, 205 n.2 (2d Cir. 2000); and then citing *Bailey v. N.Y.C. Police Dep't*, 910

F. Supp. 116, 117 (E.D.N.Y. 1996); and then citing N.Y.C. Chapter, Ch. 17, § 396)); *Artec

Constr. and Dev. Corp. v. New York City Dep't of Hous. Pres. and Dev.*, No. 15-CV-9494, 2017

WL 782911, at *4 (S.D.N.Y. Feb. 27, 2017) (finding that the New York City Department of

Investigation is an agency that cannot be sued); *Morris v. Katz*, No. 11-CV-3556, 2011 WL

3918965, at *5–6 (E.D.N.Y. Sept. 4, 2011) (same).

   **c.   Title VII, the ADA and the ADEA do not impose liability against individual
         defendants**

   The Complaint names as defendants various individuals who appear to be employed with

New York City's Department of Corrections or Department of Investigation.  However, Title

VII, the ADA and  the ADEA do not provide for the liability of individual defendants.[3]

---

   [3]  The Second Circuit has recognized that plaintiffs may assert discrimination claims
pursuant to section 1983 against individuals for violations of the Fourteenth Amendment's equal
protection clause.  *See Demoret v. Zegarelli*, 451 F.3d 140, 150 (2d Cir. 2006) ("[Section] 1983
and the Equal Protection Clause protect public employees from various forms of discrimination,
including hostile work environment and disparate treatment, on the basis of gender.  Once action
under color of state law is established, the analysis for such claims is similar to that used for
employment discrimination claims brought under Title VII, the difference being that a [section]
1983 claim, unlike a Title VII claim, can be brought against individuals." (citations omitted));
*see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 81–82 (2d Cir. 2015) (holding
that plaintiffs may assert claims under section 1983 for acts of retaliation for complaints of
discrimination).  Plaintiff may therefore be able to assert claims against the individual defendants

*Mussallihattillah v. McGinnis*, 684 F. App'x 43, 47 (2d Cir. 2017) (holding that the plaintiff's Title VII claims "against the individual defendants fail as a matter of law" (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004))); *Cayemittes v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016) ("Title VII does not provide for individual liability."); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (holding that there is no individual liability under the ADEA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (holding that the retaliation provision of the ADA does not provide for individual liability).[4]   Therefore, Plaintiff fails to allege claims against Defendants Simons,

---

under section 1983 for the same allegations that form the basis of his Title VII claim.  However, even if the Court were to liberally construe Plaintiff's claim against the individual defendants as one brought under section 1983, it would fail for the same reasons that Plaintiff fails to state a claim under Title VII, discussed further below.  *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("The elements of [an equal protection claim brought under section 1983] are generally the same as the elements of [a Title VII claim] and the two must stand or fall together." (first citing *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); and then citing *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996))); *but see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (discussing differences between discrimination claims brought under Title VII and section 1983).  In addition, as section 1983 does not permit the imposition of liability premised on the theory of *respondeat superior*, Plaintiff would need to allege that each individual defendant was personally involved in the violation of his federal rights, and the Complaint contains no such allegations.  *See id.* at 226 (citations omitted).

[4]  Although the Second Circuit has held that there is no individual liability for the ADA's retaliation provision, *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam), it has not reached the question with respect to other provisions of the ADA pertaining to employment discrimination.  However, many district courts in this Circuit have determined that other ADA claims alleging employment discrimination likewise do not provide for individual liability.  Therefore, with the exception of claims brought under Title II of the ADA for prospective injunctive relief, *see Harris v. Mills*, 572 F.3d 66, 72–73 (2d Cir. 2009), courts have held that plaintiffs may not assert ADA claims against individual defendants.  *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (collecting cases); *see also Gomez v. N.Y.C. Police Dep't*, No. 15-CV-4036, 2016 WL 3212108, at *7 (S.D.N.Y. June 7, 2016) ("[T]here is no individual liability under the ADA." (citing *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 162 (E.D.N.Y. 1996))); *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *6 (S.D.N.Y. June 1, 2016) (noting that "[i]t is well established that there is no individual

Kuczinski, Grossman, Scott-Feaster, Jonelle Shivraj, Rajin Shivraj, Greathouse and Kelley.

### d.   Plaintiff fails to state a claim under Title VII

Liberally construing Plaintiff's Complaint, the Court understands Plaintiff to be

asserting claims under Title VII for discrimination, hostile work environment and retaliation.[5]

*See Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally

construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest").

For the reasons discussed below, Plaintiff has failed to state a claim under all three theories.

### i.   Discrimination

Title VII requires that "a plaintiff must first establish a *prima facie* case of discrimination

by showing that: '(1) []he is a member of a protected class; (2) []he is qualified for h[is] position;

(3) []he suffered an adverse employment action; and (4) the circumstances give rise to an

inference of discrimination.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d

Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  At the

pleading stage, a plaintiff must allege facts that plausibly support a finding that he suffered an

---

liability under the ADA" (alteration in original) (quoting *Nelson v. City of New York*, No. 11-
CV-2732, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013))).

[5]  While Plaintiff attached the right-to-sue letter issued by the EEOC to the Complaint, he
did not attach the initial charge filed with the EEOC, and the Court is therefore unable to
determine which claims were included in his EEOC charge.  *See Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62, 82–83 (2d Cir. 2001) ("[A] plaintiff typically may raise in a district court complaint
only those claims that either were included in or are 'reasonably related to' the allegations
contained in her EEOC charge." (citing, *inter alia*, *Butts v. City of New York Dep't of Hous.
Pres. and Dev.*, 990 F.2d 1397, 1401–02 (2d Cir. 1993))).  Nevertheless, the Court will address
the merits of Plaintiff's claims, because "the weight of precedent demonstrates that
administrative exhaustion is not a *jurisdictional* requirement; rather, it is merely a precondition
of suit and, accordingly, it is subject to equitable defenses."  *Fowlkes v. Ironworkers Local 40*,
790 F.3d 378, 385 (2d Cir. 2015) (emphasis in original) (holding that, while the question of
whether the plaintiff properly exhausted his claims was "not free from uncertainty," "this
ambiguity has no bearing on the subject matter jurisdiction of the District Court." (citations
omitted)).

adverse employment action and provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see Luka v. Bard Coll.*, --- F. Supp. 3d ---, ---, 2017 WL 2839641, at *4 (S.D.N.Y. June 29, 2017).

Here, Plaintiff fails to state a claim of discrimination under Title VII because the Complaint is devoid of any facts suggesting that Plaintiff's termination was motivated in any way by discriminatory intent. Plaintiff has indicated on the court form provided to *pro se* litigants the various bases upon which he alleges discrimination, including his race, color, gender or sex, religion, national origin, age and PTSD disability. (Compl. at 6.) However, the substance of Plaintiff's allegations characterize the bases for his termination as "lies," (*id.* at 11), "game [] playing," (*id.* at 17) and "false narrative," (*id.* at 18). The Complaint fails to allege facts suggesting that Plaintiff's termination was motivated by an intent to discriminate based upon his membership within a class protected by Title VII. *See Vega*, 801 F.3d at 84–86. Without any such allegations, the Complaint fails to state a claim of discrimination under Title VII.

### ii. Hostile work environment

To state a hostile work environment claim, a plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Shultz v. Shearith*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive

enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  "It is axiomatic that mistreatment at work . . . through subjection to a hostile environment . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998)).

As with Plaintiff's discrimination claim, Plaintiff's hostile work environment claim fails because the Complaint does not allege that the conduct creating the hostile work environment was motivated by any discriminatory intent.  Plaintiff alleges that he was subject to mistreatment by other correction staff, who defaced his locker, and "sexually abused, hazed and assaulted" him.  (Compl. at 11, 17, 19, 20, 24.)  Assuming that such facts are sufficient to allege a hostile work environment, Plaintiff fails to allege any relationship between such conduct and his status as a member of a protected class.  *See Tiffany v. Dzwonczyk*, 696 F. App'x 7, 9 (2d Cir. 2017) (affirming dismissal of hostile work environment claim where the plaintiff "fail[ed] to allege any facts suggesting a relationship between the adverse actions and his membership in a Title VII protected class"); *see also Gordon v. City of New York*, 612 F. App'x 629, 632 (2d Cir. 2015) (same).  Therefore, Plaintiff has not stated a hostile work environment claim under Title VII.

### iii. Retaliation

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-(3)(a).  To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action;

and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  As with other claims analyzed under the framework announced in *McDonnell Douglas Corporation v. Green*, at the pleading stage, the allegations need only give "plausible support to the reduced prima facie requirements."  *Id.*  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against [him], (2) 'because' [he] has opposed any unlawful employment practice."  *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 (2d Cir. 2016) (quoting *Vega*, 801 F.3d at 90).

Plaintiff has not met his burden to state a claim of retaliation under Title VII.  Plaintiff alleges that he was "run . . . out of the jail" by other corrections officers and inmates after he "refused to get with the program" and "hop on board the corruption train."  (Compl. at 24.) However, Plaintiff has not alleged that he engaged in any protected activity, nor has he provided facts suggesting that his employment was terminated because he engaged in such activity.[6]

---

[6]  To the extent Plaintiff alleges that other allegations in the Complaint form the basis of his retaliation claim, these allegations similarly fail to state a claim.  Plaintiff alleges that "the control room Captain" refused to reassign him to a separate area of the facility after he was "splashed . . . assaulted [and] . . . repeatedly threatened."  (Compl. at 19.)  Plaintiff further alleges that, upon making such requests, the Captain "would laugh and say I didn't receive that memo you're going there anyway go report it like you report everything else."  (*Id.*)  A refusal to grant a transfer or reassignment request may in some instances constitute an adverse employment action for purposes of a Title VII retaliation claim if there is "objective indicia that the transfer denial created a materially significant disadvantage in the working conditions of the aggrieved employee."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008).  However, the Complaint does not contain sufficient details regarding such reports, including what Plaintiff reported, when he reported it, to whom it was reported, and when any adverse action occurred.  Therefore, even construing these allegations as the basis of Plaintiff's retaliation claim, Plaintiff has not pled facts alleging that he was retaliated against "because he opposed any unlawful employment practice."  *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 (2d Cir. 2016) (quoting *Vega*, 801 F.3d at 90).

Plaintiff therefore fails to state a claim of retaliation under Title VII.  *See Vega*, 801 F.3d at 90; *Littlejohn*, 795 F.3d at 319; *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001); *see also Lovell v. Consol. Edison of N.Y., Inc.*, No. 14-CV-7592, 2015 WL 2250374, at *4 (E.D.N.Y. May 11, 2015) (dismissing a complaint where the plaintiff made "only bald assertions that he was retaliated against, without providing any factual allegations indicating that there was a causal connection between a protected activity and the adverse action," and observing that the "plaintiff has not alleged that he engaged in any protected activity" (citations omitted)).

### e.   Plaintiff fails to state a claim under the ADA

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d. Cir. 2015); *see also Dooley v. Jet Blue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Davis*, 804 F.3d at 235) (outlining the requirements of a prima facie case under the ADA).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities include standing, lifting, bending, speaking, and working.  *Id.* § 12102(2)(A); *see also Dooley*, 636 F. App'x at 21; *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 66 (2d Cir. 2014).

Although a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible.  *See Vega*, 801 F.3d at 84–87.  At

the pleading stage, to state a claim of employment discrimination under the ADA, a plaintiff

must plausibly allege that (1) her employer took an adverse action against her, and (2) the

disability or perceived disability was a "motivating factor" in the decision.  *Id.* at 87; *see also*

*Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for

discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia,

that she 'suffered [an] adverse employment action because of [her] disability.'" (quoting

*Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001))).  "A plaintiff suffers an

adverse employment action when she experiences a materially adverse change in the terms and

conditions of employment."  *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 147

(E.D.N.Y. 2015) (citation and internal quotation marks omitted).  Employment actions "deemed

sufficiently disadvantageous to constitute an adverse employment action include a termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)

(alteration and internal quotation marks omitted); *see also Fahrenkrug v. Verizon Servs. Corp.*,

652 F. App'x 54, 56 (2d Cir. 2016) (citing *Beyer*, 524 F.3d at 163) (explaining what conduct

constitutes an adverse employment action).

Plaintiff fails to state a claim under the ADA.  "[T]he [C]omplaint alleges no facts

indicating that [Plaintiff's] PTSD . . . impaired any life activities," *Soules v. Town of Oxford*, 669

F. App'x 54, 56 (2d Cir. 2016), nor does it contain any allegation that Plaintiff was terminated

because of his alleged disability or perceived disability, *see Giambattista*, 584 F. App'x at 25

(affirming dismissal of ADA discrimination claim where "the complaint did not plausibly allege

that the [employer] discriminated against [the plaintiff] because of a perceived mental

impairment, 'nor did it set forth any factual circumstances from which a disability-based motivation for such an action might be inferred.'" (alterations omitted) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007))); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." (citing *Littlejohn*, 795 F.3d at 310); *see also Biro v. Conde Nast*, 807 F.3d 541, 546–47 (2d Cir. 2016) (affirming dismissal of a complaint because the plaintiff's allegations against the defendants were conclusory and insufficient); *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 103 (2d Cir. 2016) (affirming dismissal of a plaintiff's claims because he failed to "include any factual allegations to support" the claims). For these reasons, Plaintiff has not stated a claim under the ADA.

### f. Plaintiff fails to state a claim under the ADEA

Under the ADEA, an employer may not "fail or refuse to hire or . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 25 (2d Cir. 2015) (citing 29 U.S.C. § 623(a)(1)). Discrimination claims under the ADEA are subject to the three-stage *McDonnell Douglas* burden-shifting framework. *Chapotkat*, 605 F. App'x at 26 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (applying *McDonnell Douglas* framework to ADEA age discrimination claim)). To establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an

inference of discrimination." *Gorzynski*, 596 F.3d at 107 (citation omitted); *see also Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (stating elements of an ADEA discrimination claim).   To be within the age group protected by the ADEA, a plaintiff must have been over forty years old at the time that the relevant discriminatory conduct took place.   *See* 29 U.S.C. § 631(a); *see also Feldman v. Nassau Cty.*, 434 F.3d 177, 180 (2d Cir. 2006) ("The ADEA generally protects individuals over forty from age discrimination in employment."   (citations omitted)).

Plaintiff fails to state a claim under the ADEA because he is not within the age group protected under the statute.   Plaintiff indicates that he was born in 1994. (Compl. at 6). Therefore, Plaintiff was under forty years old at the time the relevant alleged conduct occurred, and his allegations thus do not state a claim under the ADEA.   *See* 29 U.S.C. § 631(a); *see also Spain v. Ball*, 928 F.2d 61, 62–63 (2d Cir. 1991) (per curiam).

### g.   Plaintiff fails to state a claim under the Uniformed Services Employment and Reemployment Rights Act

To the extent Plaintiff alleges that his employment was terminated based upon his military status, the Court will liberally construe his claim as arising under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").   38 U.S.C. § 4311(a);[7] *see also Lovell*, 2015 WL 2250374 at *4–5 (construing a complaint as asserting claims under the

---

[7]   Title 38 U.S.C. § 4311(a) states:

(a) A person who is a member of, applies to be a member of, performs, has performed,  applies to perform, or has an obligation to perform service in a uniformed service shall   not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application  for membership, performance of service, application for service, or obligation.

USERRA in light of a *pro se* plaintiff's military status).  The USERRA prohibits employment discrimination on the basis of an employee's membership and service in the uniform services of the United States and establishes certain reemployment rights following such service.  "The purpose of USERRA is to encourage military service 'by eliminating or minimizing the disadvantages to civilian careers'; 'to minimize the disruption to the lives' of service members and their employers 'by providing for the prompt reemployment' of service members; and 'to prohibit discrimination' against service members."  *Serricchio v. Wachovia Sec. LLC,* 658 F.3d 169, 174 (2d Cir. 2011) (quoting 38 U.S.C. § 4301(a)).

　　To state a claim under the USERRA, a plaintiff must plead "facts upon which it could plausibly be inferred that his military service or any protected activity was a 'substantial or motivating factor'" in the adverse employment action taken against him.  *Hunt v. Klein,* 476 F. App'x 889, 891 (2d Cir. 2012) (quoting *NLRB v. Transp. Mgmt.*, 462 U.S. 393, 401 (1983)).

　　Plaintiff fails to state a claim under the USERRA because the Complaint contains no allegations from which it could plausibly be inferred that his military status was considered in the decision to terminate his employment.  Plaintiff makes no mention of his military status aside from stating that he was informed of his termination upon returning to work from military leave and vacation.  (Compl. at 7–8.)  The Court recognizes that courts have considered proximity in time between military activity and the adverse employment action as one factor in evaluating claims of discriminatory motivation.  *See, e.g.*, *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001) (discussing proximity in time as one of many factors from which discriminatory motivation may be reasonably inferred); *see also Woodward v. N.Y. Health and Hosp. Corp.*, 554 F. Supp. 2d 329, 348–49 (E.D.N.Y. 2009) (discussing factors mentioned in *Sheehan*).  However, nowhere in the Complaint does Plaintiff make even a conclusory allegation that he was

terminated because of his military status, much less plead facts supporting a plausible inference of discriminatory motivation.  Therefore, Plaintiff has not adequately pled a claim of discrimination under the USERRA.[8]  *See Hunt v. Klein*, 2011 WL 651876, at *1, 3 (S.D.N.Y. Feb. 10, 2011) (dismissing a complaint because the plaintiff "merely describe[d] various disciplinary actions taken against him, and note[d] that Plaintiff is a military service member," but did not allege facts suggesting that he was disciplined because of his military status), *aff'd*, 476 F. App'x 889 (2d Cir. 2012).

## III.    Conclusion

For the reasons set forth above, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).  In light of Plaintiff's *pro se* status, the Court grants Plaintiff thirty (30) days to amend the Complaint in order to state a claim upon which relief can be granted against the City of New York.  Plaintiff is reminded that an amended complaint completely replaces the original Complaint.  The amended complaint must be captioned, "Amended Complaint," and shall bear the same docket number as this order.  Plaintiff should also attach to any amended complaint a copy of the EEOC charge.  No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

---

[8]  In addition to acts of discrimination, the "USERRA further prohibits an employer from taking an adverse employment action against any person in retaliation for enforcing his USERRA rights."  *Caines v. City of New York*, No. 13-CV-676, 2015 WL 13021892, at *4 (S.D.N.Y. July 8, 2015) (citing 38 U.S.C. § 4311(b)), *aff'd*, 649 F. App'x 74 (2d Cir. 2016).  However, like retaliation claims under Title VII, such claims must include allegations suggesting that the plaintiff was engaged in a protected activity, and that there was some causal connection between the protected activity and the adverse employment action.  *See Kassel v. City of Middletown*, --- F. Supp. 3d. ---, ---, 2017 WL 4350281, at *13 (S.D.N.Y. Sept. 28, 2017); *Lapaix v. City of New York*, No. 13-CV-7306, 2014 WL 3950905, at *5–6 (S.D.N.Y. Aug. 12, 2014); *Fink v. City of New York*, 129 F. Supp. 2d 511, 527 (E.D.N.Y. 2001).  Therefore, to the extent that Plaintiff's allegations could be construed as asserting a retaliation claim under the USERRA, such a claim would fail for the same reasons as Plaintiff's Title VII retaliation claim.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  November 22, 2017
       Brooklyn, New York